May I please accord good morning my name is Haitham Baluth and I present petitioner in this case Mr. Sarkis. Your honors this matter is now before you because the BIA refused and arbitrarily irrationally and contrary to law ignored a second asylum application filed concurrently with a motion to reopen. This decision by the BIA is contrary to its own regulation. How did the second asylum application differ from the first asylum application? Quite a bit your honor. The second application specifically states as a ground of persecution a membership in a particular social group that was not stated in the first asylum application. And that particular social group your honor is the fact that is constitutes Lebanese men marrying Jewish women. But it was still filed more than a year after your client's arrival in the United States. So it was late wasn't it? I mean same as the first one it was late. Precisely not your honor because the second application can be filed so long as Mr. Sarkis shows changed country condition. Isn't that the same for the first application? Wouldn't he have to show changed condition if he was a year late or more than a year late? No your honor. On the first instance he filed his asylum application when he was put in proceeding. And he had missed his one year chance at that time. And the IGA as well as the BIA ruled that his time barred for filing an asylum. So truly that first asylum application was never ever considered. Are you saying his marriage is a changed country condition? Not at all. We is the changed country condition your honor is the fact that Lebanon was invaded by a foreign force. So what's the marriage? The marriage is a changed personal condition? The marriage is changed in personal circumstances. I agree. However that is allowed once you show that the country condition is satisfied. The country condition has changed. He can voluntarily change his marital status and circumvent the asylum rules? Could you say that again? He can voluntarily change his personal circumstances such as getting married, getting divorced, having whatever. I mean he can voluntarily do things to circumvent the otherwise binding asylum rules? He could certainly do that but he could not order an invasion of a country which allows him to submit now this new evidence. So yes he can get married, change his personal circumstances, but the law does not allow him to bring those circumstances before the BIA unless he meets a strict standard of changed country conditions which he met. So in his original petition his complaint, his ground for asylum or for withholding as it turns out was that the Syrian army controlled basically the military and therefore he should be granted withholding. Basically that was his basis as a Christian. Wait a minute. And they said no thank you. That's not good enough. Right? For withholding. Okay. So on the second one what he wants to say is I guess Syria has now left, right? Has gone. And there was an Israeli invasion which didn't go so well but anyway there was an Israeli invasion. Correct? Absolutely. And that's his point. And they were beaten back and so his point is that because of that he can then change his personal status. He couldn't have done it before but now he can because now the people like Jewish people even less than they did before, not that they loved them before. Correct? Correct. And it's allowed. That's your position, right? That is our position. Okay. And it is allowed under ACFR 1003.2 C3II because it calls for the filing for the first time or reapplying for asylum once we establish changed country conditions. Now the country conditions wasn't necessarily that the Israeli just invaded. The Israeli invaded by doing so, Your Honor. Hezbollah was all of a sudden even much more visible, much more in control of the country. It actually declared war pretty much and had a war with Lebanon. And by the way, the airport closed two hours after I arrived in Lebanon that summer and I had to leave by boat with my own family. I was visiting my family. So Hezbollah, quite to the contrary of the initial goal of the invasion, is much stronger now as well. And because it's much stronger, he's always feared Hezbollah as stated in the first asylum application. Now that it's much stronger and much more visible, he even fears them more. And remember, the raison d'etre of the Hezbollah is the destruction of the Jewish states next door. They would have no tolerance for someone coming back with a Jewish wife. That is our premise of the second asylum application. Furthermore, Your Honors, the BIA, I just want to take you back a second. Remember, the IJ denied the asylum as time-barred. BIA affirmed that it's time-barred. And guess what it does now? It comes back and says, oh, it seemingly agrees that we have changed country condition, comes back and says, well, let's look at the asylum application, which is just time-barred before. And then it looked at that asylum application and says, by the way, it does not meet the prima facie of an asylum application. It sounds very arbitrary that the BIA can now come back and reopen an asylum application that it denied for time-barred and rules on it without any evidentiary hearing. I'm not clear how that happened. The judge, the IJ, apparently was going to set a briefing schedule at the time of the original hearing to give you an opportunity to present changed country conditions. Is that right? I wish I were there then. I'm the third attorney on the case. That was another counsel, yes, Your Honor. Well, I meant your side. I mean, that's what happened. Yes. And then comes the hearing and no country conditions evidence, changed country conditions evidence is presented. That's true. Because the former attorney said in his briefing, appealed to the BIA, it was a violation of due process because he had he believed that the IJ had already made a decision to time-bar this asylum application. Okay. Let's say you're right about that. What evidence does the record show that could have been presented but wasn't? As to the changed country condition, not much, Your Honor, at that time. Syria had left, in fact. Things were getting much better. So that's a no harm, no foul kind of thing is what you're saying? That is my take on that. He could not have really showed changed country condition and met the time, the one-year time-bar. And that's what this case does. We have changed country conditions that we have met based on the case of Tufekhi that we, this Court had decided, and then allows him to bring this new asylum application. I notice you have about a couple of minutes left. Do you want to use them or reserve them? If I may. I want to use them to request what Mr. Cerqui suggested this Honorable Court do. Confirm that he's met the burden of showing changed country conditions. Proclaim that the BIA committed a reversible error by ignoring the second asylum application in violation of 8 CFR 1003.2 C3II and as set forth in Tufekhi v. Mokassi. Third, remain the matter to the BIA to consider whether the second asylum application meets the prima facie eligibility with a suggestion that it does. We had it on file. It was never considered. And if so, order the BIA to remain that application to the IJ for a full evidentiary hearing on his second asylum application without regard to the one-year bar, because now we don't have a one-year bar if we show a changed country condition. As to the general rule, Mr. Cerqui requests that this Court decide that once an alien proves changed country condition, he, she should be allowed to introduce new evidence of changed personal circumstances by way of a new or amended asylum application. And lastly, Mr. Cerqui requests that this Court take action as it deems appropriate to keep this family of refugee his wife was a Soviet refugee from the Soviet Union, honors, a Jewish from the Soviet Union, keep them together in this protected land. Thank you very much, Mr. Cerqui. Thank you. Good morning. May it please the Court. Dallin Riley Holyoak, a trial attorney with the U.S. Department of Justice on behalf of the Attorney General. Petitioner simply misconstrued the Board's decision, which found that he did not demonstrate changed country conditions in Lebanon to justify his untimely departure. Mr. Riley, could you keep your voice up a little bit? I'm having a little trouble hearing you. Okay. Yes, Your Honor. A little slower, too. Yeah, a little slower. That might do it. It will do. If you talk fast and low, it's really hard on old ears. All right. Will do. I think the important point that Petitioner's counsel just made was that he did have to demonstrate changed country conditions a priori before the Board could then move on to determining whether or not his changed circumstances made him prima facie eligible for relief. It's a very important point in this case. The problem is that this case ended with a first step. He never demonstrated changed country conditions. Where you look at the Court's ---- At his first hearing on the first petition, he did not show changed country conditions. Those are two separate issues in this case. The way this case sits, there was one petition for review, which was from his initial asylum application, and then later he filed a motion to reopen, which was based on a new asylum application. The first case, as Petitioner's counsel just admitted, he wouldn't have been able to demonstrate changed country conditions at that time. This is the end of the issue. The first one in his claim was the Syrian Army, if I join the Army, I'll be joining Syria, and Syria won't like me. Right. They said, no, that's no deal. He appealed that to us. That's problem one. Problem two. Problem two. He now says, but now the Israelis invaded, and that made Hezbollah stronger. There is the change, he says. Right. You say. Right. There are several problems with the second change. As a requirement to submit his new asylum application, he had to first demonstrate changed country conditions. And there's a reason for that. And this court has actually upheld that way of looking at these applications. Because, first of all, you can't have asylum applications creating their own changes. You have to prove first that there was an actual change in your country that was material, that was new, and actually affected your asylum application. When you look at what the board did in this case, they looked at it and said, well, it's material. Material doesn't mean that it proves your case. It just has some tendency to support your case. And it said that it was new. But it didn't demonstrate changed country conditions. If you look at what he's arguing, he's arguing that Hezbollah ended up being more powerful in Israel. But he never connects that with objective evidence that shows why does that affect your merit? Why does that affect your fear? Your individual fear? Sure. You're saying you have a subjective fear. But what about the objective element? How are you going to prove that just by being married to a Jewish woman, returning from the United States, that you yourself will be threatened? The Sixth Circuit, as you pointed out, has a decision which is very informative. It's called Berry v. Gonzalez. And it says many people have interfaith marriages in Lebanon. It's not the issue that Petitioner tries to paint it as. But shouldn't the BIA consider that in the first instance? I would think so. But the problem is this case stops with the first step. He never gets past getting his motion to reopen in. Because it's untimely, he has to demonstrate changed country conditions, and that's the end. The board did go on to the next step as an alternative finding. It talked about his prima facie eligibility for relief. The problem is he failed to demonstrate prima facie eligibility for relief. So even if the board was going to say, okay, change country conditions, now tell us why you merit asylum as a prima facie basis, and then they would remand it to the immigration judge for a full hearing. He didn't demonstrate that prima facie eligibility for relief because there was no pattern or practice of persecuting similarly situated people. For example, he never brought objective evidence that showed that Christians returning from the U.S. who are married to a Jewish woman would have – there would be a pattern or practice. As I pointed out, the Sixth Circuit decision basically knocks that out of the water. It says there's no pattern or practice of persecuting these types of individuals. Let me ask you about his conscription issue. If I understand it, he says he was the victim of past persecution because he was going to be conscripted by the army, taken over by the Syrians. He never argued past persecution. He argued that his brother and his cousin were persecuted. He argued he had a fear of persecution in his initial case. So there was no past persecution, but there was an argument regarding well-founded future fear. Fair enough. They say, as a general proposition, fear of conscription is not persecution. Right. And the answer to that is we're not talking about being conscripted by your own country. We're talking about being conscripted by a – into an army that's been taken over by a foreign sovereign. What's the answer to that? Well, there are several issues to that. First is that his first asylum application was time barred. That's the side issue, so we don't – Bears on withholding, though, doesn't it? Right. The next part is about whether or not he actually would be conscripted. There are several issues there. The incident with his brother and his cousin happened back in 1992. There have been no other incidents of harm. His brother lives in Lebanon. That may be, but, I mean, the BIA said conscription just isn't a cognizable claim. Alone and in general. The way the language is worded is that conscription in general is not a basis for persecution. What I'm getting at is they really didn't come to grips with his argument that conscription by a country who's been taken over by another country is in a different category. Well, the first point is that the board did address his asylum claim, but they stopped because it was barred by the one-year bar. When you move to the withholding element, whether or not that demonstrates whether or not he will be persecuted, which is a much higher standard, then conscription in general, yeah, it doesn't meet the withholding standard. How about conscription in specifics with this situation? They didn't deal with that. No, they dealt in general with his. Why shouldn't we say, look, that's the general rule, but he's got an exception to the rule and you didn't deal with the exception to the rule? Well, I don't think. Go back and deal with the exception to the rule. Well, I don't think he ever established an objective basis, even on his first asylum application, to prove that conscription on his basis would end up having a well-found, or would end up having a likelihood, or more likely than not, because that's established. Shouldn't the BIA deal with that first? I think the board. What they said was conscription is off the table. We don't deal with conscription. But, I mean, maybe he'll win, maybe he'll lose, but shouldn't they deal with that? But I don't think they took conscription off the table. I think they considered it as part of the totality of the circumstances, and they were saying, look, you're arguing that conscription in your situation would equal a more likely than not chance of you being persecuted. But the problem is, is that he didn't – there's too many extenuated circumstances. He would have to first be detained, required to serve in the Lebanese Army while he's already in his mid-40s, in a unit controlled by the Syrian Army, and possibly treated like his cousin or his brother. It's just too extenuated to actually get to that point. But that's not what they held. Well, no. And the board – What they held was conscription, we don't deal with conscription. Well, that he didn't demonstrate that his case was one where conscription would be an issue. And that's the full stop. So, sure, the board didn't go into that extra analysis, but the point is, is that he didn't demonstrate that his situation of being conscripted would equal a claim for withholding. And maybe to crystallize this better, the point is, is that he needed to demonstrate something more for the board to need to go into further analysis. The board wasn't going to address issues that he didn't really present facts on or evidence on. I think the only other issues I want to make here, other than his asylum being barred by the 1-year, he didn't really challenge the board's exact findings on withholding or cat in his brief. Let me go back to what this conscription – this is the part of the case that bothered me. You make a very good argument about why maybe the conscription claim doesn't work. But that's not what the BIA held. What the BIA said is, with respect to Respondent's subjective fear of being subject to compulsory military service, we do not find that such treatment amounts to persecution under the Act. They didn't deal with his claim that he's being conscripted into an army that's controlled by a foreign force. But I feel like that was a more academic discussion, because the problem with this case is he never demonstrated objective evidence that would require the board to go into further analysis. He didn't demonstrate he would be conscripted. He didn't demonstrate that if he was conscripted – But that's not the basis of their ruling. They say conscription isn't cognizable, basically. And in general, conscription is not. And he didn't demonstrate a need to go beyond. And I'm not saying this is not the general situation. This is the specific. And all they say is generally it's not. Well, I think the problem with this case – I see where Your Honor is going with that. I feel like there should have been more analysis on that point. But the problem is, is that with this case, he didn't demonstrate the objective evidence for the board to need to go into that kind of detail. He just demonstrated a claim of conscription. And he was claiming that maybe, possibly, he would be conscripted. Maybe, possibly, he would be treated like his brothers. It's just too extenuated for the board to need to go into that further analysis. But I think further, I think even if the board didn't go into that further analysis, there's no question that he – there's no objective evidence in the record for a further support of that kind of claim. He – there's just nothing there. I don't know what else to say on that point other than if the board had gone into further analysis, it may have become more clear. But I think it's strange to require the board to go into analysis that a Petitioner didn't prove – where a Petitioner doesn't present objective evidence to support it on that. I think the only other thing I wanted to point out was that, other than him conceding that he needed to demonstrate changed country conditions as an initial part to get his motion reopened, that he also didn't demonstrate preemptive eligibility for relief. Thank you, Counselor. Thank you as well. The case just argued is submitted. Good morning.
judges: Thompson, Fernandez, Silverman